IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RANDY L. FOUT                                                              PLAINTIFF

V.                                          NO. 15-2058

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Randy L. Fout, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. §405(g).

I.       **Procedural Background:**

Plaintiff filed his applications for DIB and SSI on June 28, 2012,[1] alleging disability since February 1, 2012, due to bulging disc in back, high blood pressure, and high cholesterol-diet controlled. (Tr. 12, 167, 178).   An administrative hearing was held on September 9, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 24-54).

By written decision dated January 14, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe –

---

[1] According to the ALJ, subsequent to the hearing, Plaintiff filed a Title XVI application for SSI on April 17, 2014,  which was escalated to the hearing level. (Tr. 12).

degenerative disc disease, hypertension and morbid obesity. (Tr. 14).   However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (Tr. 15).  With the help of the vocational expert (VE), the ALJ determined Plaintiff was unable to perform any past relevant work, that he had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy, and a finding of "not disabled" was reached by direct application of Medical-Vocational Rule 202.22. (Tr. 19-20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information and denied the request on March 10, 2015. (Tr. 1-5).  Subsequently, Plaintiff filed this action. (Doc. 1).  Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.   Evidence Presented:

Plaintiff presented to Mercy Hospital on March 7, 2012, with hypertension. (Tr. 226). From a musculoskeletal standpoint, he had normal range of motion and exhibited no edema. (Tr. 231).  He was diagnosed with high blood pressure and was discharged to home with his family, with a steady gait. (Tr. 231-232).  On March 9, 2012, Plaintiff presented again to Mercy Hospital, where he reported that he had been seen at a clinic that day, and reportedly

2

had high blood pressure and an abnormal EKG. (Tr. 240-241).  Plaintiff reported he had

lately been having a lot of issues with his back, and had started on muscle relaxants and pain

medications, which were not helping much. (Tr. 241).  The assessment was accelerated

hypertension, abnormal/ischemic changes on EKG, and chronic back pain. (Tr. 244).  While

Plaintiff was at the hospital, a MRI Lumbar without contrast was performed, which revealed

the following:

1. Grade 1 anterolisthesis L5 upon S1 due to unilateral left pars defect and facet
   arthropathy. Mild disc degeneration L5-S1 and there is a small left lateral disc
   protrusion L5-S1 contributing to there being mild to moderate left foraminal
   stenosis.

2. Mild dorsal spondylitic ridging and disc protrusion T12-L1 which extends
   laterally on the left at this level. There is no spinal canal stenosis but there is mild
   left foraminal stenosis at this level.

(Tr. 355).  It was found that Plaintiff did not have any evidence of any significant obstructive

disease, and no interventional therapy was planned. (Tr. 248).  Plaintiff was asked to make an

attempt to improve his diet and exercise patterns to aid in medical management of the

problem. (Tr. 249).  A CTA of his chest was negative. (Tr. 262).  Plaintiff was discharged

from the hospital on March 14, 2012. (Tr. 245).

On March 22, 2012, a Thoracic MRI without contrast was performed at Mercy

Hospital and revealed the following:

1.  Central protrusion at T11-12. Wedge deformity at T12 which appears chronic.
    Mild wedge deformity at L1 probably chronic. Minimal wedge deformity at T7
    also appearing chronic.

2. Small protrusions in the thoracic spine as described above, particularly at T6-7,
   T9-10 and diffuse moderate disc bulge biforaminal encroachment T11-12.

(Tr. 353).

On August 24, 2012, non-examining consultant, Dr. Johnny B. Craig, completed a RFC Assessment, wherein he found Plaintiff had the RFC to perform his past relevant work as generally performed in the national economy. (Tr. 61).

On December 27, 2012, Plaintiff presented to his treating physician, Dr. Todd Stewart, complaining of left ear pain and elevated blood pressure. (Tr. 298). Dr. Stewart diagnosed Plaintiff with hypertension and acute URI, and reported that he was not exercising on a regular basis. (Tr. 298). No joint tenderness, deformity or swelling was reported. (Tr. 300). Plaintiff presented to Dr. Stewart on January 2, 2013, still complaining of left ear pain and swelling. (Tr. 301)

On January 15, 2013, Dr. Ronald Schatzman examined Plaintiff for the Oklahoma Disability Determination Division. (Tr. 289). Plaintiff reported to Dr. Schatzman that he had severe back pain and limited movement of his back and that he had a "cloudy" head because of his medications. (Tr. 289). Dr. Schatzman assessed Plaintiff as follows:

1. Morbid obesity
2. Hypertension
3. Chronic back pain and muscle pain of upper extremities.

(Tr. 292). Dr. Schatman noted that Plaintiff had grip strength of 5/5 bilaterally strong and firm, and that the cervical spine was non-tender with full range of motion. (Tr. 291). He further found there were 20/90 degrees of flexion, 0/25 degrees of extension and 10/25 degrees of bilateral side bending, straight leg raising reflex was negative bilaterally, negative in the sitting position, and bilaterally positive in the supine position. (Tr. 291).

On February 5, 2013, Plaintiff reported no problems to Dr. Stewart, and was not having any problem with his medications. (Tr. 304). Dr. Stewart recommended Plaintiff give

attention to a calorie-restricted diet rich in fresh fruit and vegetables with limited meat, and aerobic exercise at least 30 minutes, three to four times weekly. (Tr. 305).

On February 15, 2013, Plaintiff was diagnosed by Dr. Stewart with diabetes mellitus type II. (Tr. 310). Plaintiff was started on a low dose of metformin, and was encouraged to start an aerobic routine. (Tr. 310).

On February 21, 2013, non-examining consultant, Dr. David M. Bailey, completed a Physical RFC Assessment, finding that Plaintiff did not have the RFC to perform his past relevant work, but would be able to perform light work. (Tr. 71).

On February 27, 2013, Julian Lev, Ph.D., completed a Psychiatric Review Technique form, and concluded that there were no work-related functional imitations resulting from a possible mental impairment, and that there was no discrete mental impairment. (Tr. 68). The functional limitations described were found to be related to either Plaintiff's physical condition or his medications. (Tr. 68).

On May 16, 2013, Plaintiff saw Dr. Stewart, and it was reported that Plaintiff had no significant problems with hypoglycemia, and was tolerating the medications well. (Tr. 313). Dr. Stewart once again recommended attention to a calorie-restricted diet rich in fresh fruit and vegetables with limited meat, and aerobic exercise at least 30 minutes, three to four times weekly. (Tr. 313). Dr. Stewart discussed potential interventional pain management with Plaintiff, and found that Plaintiff was tolerating medications well and was compliant with the therapy, and that his blood pressure readings were well controlled. (Tr. 314). Better attention to aerobic exercise was recommended. (Tr. 314).

On June 3, 2013, a MRI of Plaintiff's lumbar spine revealed left L5 pars defect with slight anterolisthesis of L5 on S1 by a few millimeters, with some left foraminal stenosis

similar to prior exam. L5 was a transitional-type segment, and spurring, central disc protrusion at T12-L1 was slightly progressed from the previous exam on March 12, 2012. (Tr. 351).

On June 12, 2013, Dr. Larry Armstrong, of NWA Neuroscience Institute, saw Plaintiff for an initial lumbar spine PT evaluation. (Tr. 326).  Plaintiff presented to him with complaints of constant episodes of back pain, described as sharp and aching. (Tr. 326).  It was reported that Plaintiff was on no current medications. (Tr. 326).  Dr. Armstrong assessed Plaintiff with thoracic strain, lumbar disc degeneration, and Lumbago. (Tr. 327).   Dr. Armstrong recommended physical therapy for mobility and strengthening as well as pain management for possible trigger point injections. (Tr. 327).  Plaintiff indicated he would think about his options. (Tr.l 327).

On August 21, 2013, Plaintiff reported to Dr. Stewart that he had not been able to exercise with his back issues, and diet and exercise was again discussed. (Tr. 319).  Dr. Stewart again recommended attention be given to diet and exercise, and reviewed the importance of soft tissue strengthening. (Tr. 319).  Plaintiff denied any new problems with hypertension, was tolerating medications well and compliant with therapy, and it was reported his hypertension was well controlled. (Tr. 320).

Plaintiff began seeing Dr. Adam Sewell and Dr. Rowland T. Stewart, of Arkansas Pain Specialists, on February 10, 2014, and continued seeing them through November of 2014. (Tr. 330, 343, 365, 385, 395, 408, 416, 418, 429, 439).  By September 8, 2014, Dr. Sewell noted that Plaintiff reported his pain was well controlled at that time, and Plaintiff did not require any adjustments to his regimen.  (Tr. 389). Plaintiff reported that the medication was offering pain relief. (Tr. 389).  In a September 16, 2014 report, Dr. Stewart noted that

Plaintiff reported he fell down some stairs, and had a possible compression fracture. (r. 395). Plaintiff also complained of grogginess, occasional disorientation, and depressed mood. (Tr. 395, 397).   On October 6, 2014, Plaintiff's pain was reported as well controlled, but he continued to have muscle spasms. (Tr. 412).   On October 9, 2014, and November 20, 2014, Dr. Sewell  performed radiofrequency neurotomy of the medial branches that supplied the left thoracic 10, left thoracic 11 zygapophyseal joints. (Tr. 416, 439).   On November 5, 2014, Plaintiff reported no new problems and no side effects, and was stable on the medication regimen. (Tr. 418).   It was reported that Plaintiff's pain was controlled with the pain medications. (Tr. 422).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## IV.   Discussion:

Plaintiff raises the following issues in this matter:  1) The ALJ failed to fully and fairly develop the record; 2) The ALJ erred in his credibility analysis; and 3) The ALJ erred in his RFC determination. (Doc.12).

8

The Court first notes that in Plaintiff's first argument, counsel for Plaintiff made reference to Dr. Blankenship as Plaintiff's treating physician.  (Doc. 12 at p. 10).  There is no record of Dr. Blankenship treating Plaintiff, and it appears counsel is confusing this case with another case, and counsel is encouraged to carefully proof-read the brief before it is filed.

A.      **Failure to Fully and Fairly Develop the Record:**

Plaintiff fails to specify how the ALJ failed to develop the record in this case, and simply cites the Court to general law on this issue.  The Court has carefully reviewed the record in this case, and believes the record contains sufficient medical evidence for the ALJ to have been able to make a determination, and there was no reason for the ALJ to develop the record further.  Plaintiff's argument is therefore without merit.

B.  **Credibility Analysis**:

Plaintiff argues that the ALJ failed to properly discuss the side effects of Plaintiff's medications, and did not perform a proper Polaski analysis. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).   While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 16).  The ALJ addressed Plaintiff's daily activities, noting that: his six-year-old daughter helped with the laundry and dishes; he could prepare his own meals; his wife helped him put on his shoes and socks; Plaintiff's blood pressure readings were well controlled; there was no evidence that any treatment other than conservative care had been recommended; there was no evidence that Plaintiff sought additional medical treatment between March 22, 2012 and December 27, 2012, when he only complained of ear pain and elevated blood pressure; Plaintiff's gait and station were consistently reported as normal; he had normal strength in both lower extremities; his muscle tone was normal, and his deep tendon reflexes were 2+; he reported no serious medication side effects; and there was no evidence that any physician assessed Plaintiff with limitations greater than those determined in the decision.  (Tr. 16-18).  The ALJ found that Plaintiff's pain appeared to be relatively well controlled with medications, and Plaintiff's pain and discomfort factor was not of such persistence or severity as to be disabling. (Tr. 18-19).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility analysis.

### C.  RFC Determination:

Plaintiff argues that the ALJ did not consider Plaintiff's diabetes and effects of his diabetes to be severe impairments, and that the ALJ did not consider the combined effects of all of his impairments.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This

includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

Plaintiff is incorrect in his statement that the ALJ failed to consider Plaintiff's diabetes.  In fact, the ALJ specifically addressed Plaintiff's diabetes early in his decision. The ALJ noted that Plaintiff reported no significant problems with hypoglycemia, was taking metformin and tolerating it well, and that the remainder of Plaintiff's medical records was primarily related to his complaints of back pain. (Tr. 14-15). Plaintiff's argument is without merit.

Plaintiff also argues that the ALJ failed to consider Plaintiff's impairments in combination.  In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination

of impairments that is 'severe.'" (Tr. 13).  He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  (Tr. 13).  The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings.  (Tr. 13).  The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Tr. 15).  This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments.  See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

The Court has also considered the medical records that were dated subsequent to the ALJ's decision.  The Appeals Council considered the additional evidence, and concluded it did not provide a basis for changing the ALJ's decision. (Tr. 1-2).  When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner.  The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action.  See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ.  As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then we

must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997).  Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence.

The ALJ's decision is dated July 14, 2014. (Tr. 12-20).  The records from Arkansas Pain Specialists dated thereafter relate to Plaintiff's condition after the ALJ's decision.  Such evidence is beyond the scope of judicial review. Probst v. Colvin, No. 4:12CV439AGF(FRB), 2013 WL 950996 at *13 (E.D. Mo. Feb. 22, 2013) citing Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992).

The ALJ considered the medical records, Plaintiff's subjective complaints and his limitations, and based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's RFC determination.

**V.      Conclusion:**

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of November, 2015.

s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE